Filed: 2/3/2017 3:15:36
PM Lynne Finley
District Clerk
Collin County, Texas
By Pam English Deputy
Envelope ID: 15125849

CAUSE NO. 366-00541-2017

| | | |
|---|---|---|
| **TOM GLEASON AND** | § | **IN THE DISTICT COURT OF** |
| **JULIE GLEASON,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **COLLIN COUNTY, TEXAS** |
| | § | |
| **MARKEL AMERICAN** | § | |
| **INSURANCE COMPANY,** | § | |
| | § | |
| **Defendant.** | § | **___ JUDICIAL DISTRICT COURT** |

## PLAINTIFFS' ORIGINAL PETITION

Plaintiffs Tom Gleason and Julie Gleason (the "Gleasons") file this Original Petition against Defendant Markel American Insurance Company ("Markel") and respectfully show the Court as follows:

## I.
## PARTIES

1.      The Gleasons are individuals residing in McKinney, Texas.

2.      Markel is a Virginia corporation that operates and provides insurance in the State of Texas. Markel may be served by serving its registered agent, CT Corporation System, 1999 Bryan Street Suite 900, Dallas TX 75201-3136.

## II.
## JURISDICTION AND VENUE

3.      Markel is registered with the Texas Department of Insurance to conduct business in Texas. Markel otherwise conducts business in Texas by, among other things, marketing and selling insurance policies to Texas residents. This Court therefore has personal jurisdiction over Markel.

4.      The amount sought by the Gleasons is within the jurisdictional limits of this Court.

5.      Venue is appropriate in this Court pursuant to Section 15.002(1) of the Texas Civil Practices and Remedies Code because all or a substantial part of the events or omissions giving rise to the claims asserted herein occurred in Collin County, Texas. Alternatively, Markel's principal place of business in Texas appears to be located at 7500 Dallas Pkwy, # 400, Plano, TX 75024, which is in Collin County, Texas. Accordingly, venue is proper in this Court pursuant to Section 15.002(3) of the Texas Civil Practices and Remedies Code.

## III.
## DISCOVERY CONTROL PLAN

6.      Discovery in this lawsuit will be conducted according to Discovery Control Plan Level 3.

## IV.
## RULE 47 STATEMENT

7.      The Gleasons seek only monetary relief over $1,000,000.

## V.
## FACTUAL BACKGROUND

### A.     The Company.

8.      Prior to October 1, 2014, Tom Gleason, Alfred Gleason and Janet
Gleason owned Cornerstone Partners, Inc. ("Cornerstone") and DPT, LLC
("DPT"). Cornerstone and DPT in turn owned Oregon Ice Cream, LLC ("Oregon
Ice Cream").

9.      Oregon Ice Cream manufactures, markets and sells three primary
brands of frozen desserts: Julie's Organic Ice Cream, Alden's Ice Cream, and
Cascade Glacier.

### B.     The D&O Coverage.

10.     In 2013, Oregon Ice Cream purchased a For Profit Management
Liability Policy, Policy No. ML-809795, from Markel (the "Management Liability
Policy"). The Management Liability Policy includes Directors and Officers and
Company Liability coverage under Endorsement MML 1001 05 10 (the "D&O

Coverage"). The D&O Coverage covers **"Claims"** made between August 31, 2013 and October 2, 2020.[1]

11.    The D&O Coverage provides the following coverage:

### SECTION I - INSURING AGREEMENTS

### A.  INSURED PERSON LIABILITY COVERAGE

The Insurer shall pay on behalf of the **Insured Persons** all **Loss** for which the **Insured Persons** are not indemnified by the **Company** and which the **Insured Persons** become legally obligated to pay on account of any **Claim** first made against **Insured Persons**, individually or otherwise, during the **Policy Period** or the **Extended Reporting Period**, if exercised, for a **Wrongful Act** taking place before or during the **Policy Period**.

12.    The D&O Coverage defines the term **"Claim"** to include the following:

A.    **Claim** means:

\* \* \*

2.    a civil proceeding against any **Insured** commenced by the service of a complaint or similar pleading upon such **Insured**;

\* \* \*

for a **Wrongful Act**, including any appeal therefrom.

13.    The D&O Coverage defines the term **"Insured"** to mean **"Insured Persons,"** which term is then defined to include the following:

**Insured Person**, whether in the singular or plural, means:

---

[1] The **"Policy Period"** is defined in the Management Liability Policy to run from August 31, 2013 to August 31, 2014. The **"Policy Period"** was extended to October 2, 2020 through a "Run-Off Endorsement," Policy Number ML815039.

  1.  any natural person who was, now is or shall during the **Policy Period** become a duly elected or appointed director, trustee, governor, **Manager,** officer, advisory director, or member of a duly constituted committee or board of the **Company,** their functional equivalent or their foreign equivalent;

* * *

14. The term **"Wrongful Act"** is defined in the D&O Coverage to mean the following:

  **K.** **Wrongful Act** means:

  1.  any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty by any **Insured Person** in their capacity as such . . .; * * *

15. The D&O Coverage defines the term **"Loss"** to include the following:

  **Loss** means the total amount the **Insured** becomes legally obligated to pay on account of covered **Claims** made against them, including, but not limited to, damages (including punitive, exemplary or multiple damages), judgments, any award of pre-judgment and post-judgment interest with respect to covered damages, settlements, **Claim Expenses**[2] .
 . .

## C. The Transaction.

16. On or about October 1, 2014, OIC Holdings, LLC ("OIC Holdings")

purchased the equity interests Tom Gleason, Alfred Gleason and Janet Gleason

---

[2] **"Item 5. Coverage Schedule"** in the Declarations to the Management Liability Policy specifies that Markel must defend any **"Claim"** that is covered by the D&O Coverage and which is not otherwise precluded by any exclusion to such policy. Additionally, the General Terms and Conditions of the Management Liability Policy define **"Claim Expenses"** to include attorneys' fees, expenses and costs of court.

owned in Cornerstone and DPT (the "Transaction"). Julie Gleason[3] also executed certain of the Transaction documents.

17.    Prior to and throughout the negotiations with OIC Holdings leading to the Transaction, Tom Gleason was the President and Chief Executive Officer of Oregon Ice Cream, and Julie Gleason was its Vice President.

**D.    The Lawsuit.**

18.    On or about December 15, 2015, OIC Holdings filed a lawsuit styled *OIC Holdings, LLC v. Tom Gleason and Julie Gleason*; Cause No. 366-05061-2015; In the 366th Judicial District Court of Collin County, Texas (the "Lawsuit"). The Gleason's were served with the Original Petition in the Lawsuit in late December 2015.

19.    The Original Petition asserts that each of the Gleasons made and committed various purported errors, misstatements, misleading statements, acts, omissions, acts of neglect, and breaches of duty and that OIC Holdings was allegedly damaged by the same. At least certain of these errors, misstatements, misleading statements, acts, omissions, acts of neglect, and breaches of duty are

---

[3] Julie Gleason did not own shares in Cornerstone or a membership interest in DPT. Any allegation in the Lawsuit (defined in paragraph 18) that Julie Gleason committed an act or omission, individually or in concert with Tom Gleason, could only be an allegation that she did so in her capacity as an officer of Oregon Ice Cream, particularly in light of the requirement that all allegations be liberally interpreted in favor of finding coverage for her.

specifically alleged to have been committed by Tom Gleason in his capacity as an officer of Oregon Ice Cream.

20.    Among the allegations contained in the Original Petition[4] are the following:

> 31. In particular, OIC learned from the Company's controller after the Closing Date that the Company's financial performance through August was substantially below budget. The controller additionally disclosed that throughout the period from January through August 2014, Tom Gleason routinely required that the Company defer expenses from one period to another and make other accounting adjustments, to be able to report to the Company's primary lender that it was in compliance with its loan covenants. Those deferrals and other adjustments violated Generally Accepted Accounting Practices ("GAAP").[5]

> 33. Tom Gleason, as President and Chief Executive Officer of the Company, oversaw the preparation of the Company's balance sheet as of September 30, 2014, which reflected positive working capital of $185,000. Per Section 2.6 of the Purchase Agreement, OIC used this balance sheet as the starting point for preparing its calculation of the actual working capital of the Company as of September 30, 2014. During the course of preparing its calculation of working capital, OIC discovered several instances where the Company's financial statements, prepared under the supervision of Tom Gleason, were not prepared in accordance with GAAP. As a result, OIC proposed approximately 31 separate adjustments to the Company's original September 30, 2014 balance sheet. The Gleasons conceded that approximately 20 of those adjustments were appropriate, however, they disputed the remaining 11 items. Pursuant to the Purchase Agreement, the Gleasons and OIC submitted the 11 disputed items to binding arbitration before a mutually selected independent certified public accountant. After receiving written submissions from the Gleasons and OIC, the independent CPA determined that substantially all of the adjustments should be made as proposed by

---

[4] OIC Holdings filed and served a First Amended Petition on or about June 8, 2016 adding further allegations against the Gleasons. This pleading is being forwarded to Markel requesting coverage for the allegations therein.

[5] Tom Gleason would only have been in a position to commit the alleged act alleged in this paragraph as an officer of Oregon Ice Cream. This is clear from a liberal interpretation of all of the allegations in the Lawsuit.

**PLAINTIFFS' ORIGINAL PETITION - PAGE 7**

OIC. This resulted in a total working capital adjustment of over $3.5 million to OIC. After applying the adjustments conceded by the Gleasons and determined by the independent CPA to the September 30, 2014 financial statements prepared by the Company under the supervision of Tom Gleason, the Company's EBITDA as of that date is reduced by nearly $1.4 million.[6]

- 55. * * * In addition, at the Gleasons' direction, the Company knowingly and intentionally deferred or otherwise shifted expense recognition from one accounting period to another, manipulated reserve balances, and ordered other accounting adjustments to manage monthly earnings in violation of GAAP. As a result, the Company's financial statements were not prepared in accordance with GAAP, in violation of Section 3.5 of the Purchase Agreement.[7]

- 56. At the Gleasons' direction, the Company also improperly treated an office relocation as a prepaid asset rather than a capital asset in September 2014. This too was at odds with GAAP.[8]

- 99. In fact, Tom Gleason knew of the organic cream issues at least as early as June 2014. This is evidenced by the fact he began altering certain of the Company's product formulations in response to the organic cream shortages in that month.

- 103. Nor did they disclose the non-GAAP adjustments to the Company's financial statements. Just the opposite. Tom Gleason knowingly and intentionally withheld from the Company's auditors information regarding out of code inventory of finished goods and raw ingredients, and certain letters confirming employee bonus programs. The Gleasons knew at all relevant times during the

---

[6] The allegations in paragraph 33 underlie the entirety of OIC Holding's allegations that Oregon Ice Cream's Earnings Before Interest, Tax, Depreciation and Amortization ("EBITDA") were purportedly substantially over estimated. OIC Holdings' allegations regarding the purported misstatement of EBITA are significant claims in the Lawsuit and the basis for OIC Holdings assertion of a substantial portion of its purported damages. Significantly, paragraph 33 specifically alleges that Tom Gleason's purported acts or omissions relating to the alleged misstatements in EBITDA were committed *in his capacity as President and Chief Executive Officer of Oregon Ice Cream.*

[7] The Gleasons, and particularly Julie Gleason, would only have been in a position to commit the acts alleged in this paragraph as officers of Oregon Ice Cream. Julie Gleason was not a shareholder, member or other equity owner in either Cornerstone or DPT.

[8] Tom Gleason would only have been in a position to commit the act alleged in this paragraph as an officer of Oregon Ice Cream. This is clear from a liberal interpretation of all of the allegations in the Lawsuit. Moreover, this allegation is the basis for OIC Holdings' claim in the Original Petition that Oregon Ice Cream purportedly would have been in default of its primary loan to its lender had it been treated as a capital expenditure, and that OIC Holdings would not have completed the Transaction had it know of such alleged default.

---

**PLAINTIFFS' ORIGINAL PETITION - PAGE 8**

negotiations over the Purchase Agreement that this information was
material and the Gleasons had a duty to disclose this information.

- 104. Tom Gleason also instructed the Company's controller to defer
certain expenses and make other accounting adjustments in violation
of GAAP so that the Company presented to its senior lender
fraudulent financial statements indicating the Company was in
compliance with its loan covenant, when in fact he knew the
opposite was true.[9]

21.    Based on the foregoing allegations, as well as other allegations

asserted in the Original Petition, OIC Holdings claimed that the Gleasons breached

a contract, committed fraud, made negligent misrepresentations, violated Chapter

27 of the Texas Business and Commerce Code and violated the Texas Securities

Act. OIC Holdings further alleged that the Gleasons damaged OIC Holdings as a

result of their alleged acts and omissions.

**E.    The Denial of Coverage.**

22.    On or about January 22, 2016, the Gleasons sought a defense of and

indemnification from the allegations in the Lawsuit by having their lawyer send a

copy of the Original Petition to Markel's lawyer.

23.    On or about March 15, 2016, Markel, through its lawyer,

acknowledged receipt of the Original Petition, and specifically acknowledged that

the Gleason's were insureds under the D&O Coverage of the Management

Liability Policy. However, Markel denied that the Management Liability Policy

---

[9] Tom Gleason would only have been in a position to commit the act alleged in paragraphs 99, 103 and
104 as an officer of Oregon Ice Cream. This is clear from a liberal interpretation of all of the allegations
in the Lawsuit.

**PLAINTIFFS' ORIGINAL PETITION - PAGE 9**

provided any coverage to the Gleasons for the allegations in the Lawsuit. Since at least March 15, 2016, Markel has continuously failed and refused to provide a defense to the Gleasons in the Lawsuit. Markel has otherwise repudiated its obligation to indemnify the Gleasons for any settlement or judgment that may be rendered in the Lawsuit.

## VI.
## CONDITIONS PRECEDENT

24.    All conditions precedent to the bringing of this action have occurred, been excused, or performed.

## VII.
## BREACH OF CONTRACT / REPUDIATION

25.    The Gleasons re-allege and incorporate by reference the factual allegations above.

26.    Markel entered into a contract with Oregon Ice Cream to provide, among others, the D&O Coverage to "**Insured Persons.**"

27.    Each of the Gleason's is an "**Insured Person**" under the D&O Coverage by reason of the fact that they were officers of Oregon Ice Cream at the time of the negotiations relating to the Transaction, and at all other times relevant to OIC Holdings' allegations in the Lawsuit.[10] The Original Petition specifically

---

[10] Markel admitted in the letter from its lawyer denying coverage that the Gleasons were Insureds under the D&O Coverage of the Management Liability Policy.

alleges that Tom Gleason committed acts and/or omissions in his capacity as an officer (President and Chief Executive Officer) of Oregon Ice Cream. The Original Petition also alleges that the Gleasons purportedly committed acts and omissions which they could only have committed as officers of Oregon Ice Cream. Indeed, Julie Gleason did not own any shares in Cornerstone nor any membership interests in DPT. The only authority she would have had to commit the purported errors and omissions was in her position as Vice President of Oregon Ice Cream.

28.   As **"Insured Persons,"** the Gleasons are intended third-party beneficiaries of the Management Liability Policy and are entitled to enforce its terms and sue for Markel's breach of such policy.

29.   The Lawsuit constitutes a civil proceeding against the Gleasons as **"Insured Persons"** under the D&O Coverage, and therefore also as **"Insureds"** under the Management Liability Policy. Further, the Lawsuit was commenced by the service of an Original Petition on the each Gleasons. The Lawsuit therefore constitutes a **"Claim"** under the D&O Coverage. The Lawsuit was first asserted against the Gleasons during the **"Policy Period."**

30.   The Original Petition alleges errors, misstatements, misleading statements, acts, omissions, neglect and/or breaches of duties by Tom Gleason as an officer of Oregon Ice Cream and/or by the Gleasons in what could only have been, based on a liberal interpretation of such allegations, in their capacities as

officers of Oregon Ice Cream. The Lawsuit therefore has at all times alleged **"Wrongful Acts"** against the Gleasons, and such **"Wrongful Acts"** are alleged to have occurred during the **"Policy Period."**

31.    Based on the foregoing, coverage exists under the D&O Policy for at least some, if not all, of the allegations in the Lawsuit.

32.    The Gleasons provided Markel with timely notice of the Lawsuit, provided it with a copy of the Original Petition and requested that it act in accordance with its obligations under the Management Liability Policy.

33.    By reason of the foregoing, Markel owes each of the Gleasons a duty to defend in the Lawsuit and to indemnify them against any settlement or judgment that may be obtained on the allegations in the Lawsuit.

34.    Despite its duty to defend the Gleasons, Markel has failed and specifically refused to fulfill this contractual obligation. Instead, Markel has specifically denied that it owes either of the Gleasons any duty to defend them in the Lawsuit. Markel's actions constitute a breach of the Management Liability Policy.

35.    Additionally, despite its duty to indemnify the Gleasons for any settlement or judgment that may be rendered in the Lawsuit, Markel has very clearly stated its intent to deny any covered **"Loss"** that may arise from OIC

Holdings' allegations. Markel's actions constitute a repudiation of its indemnification obligations in the Management Liability Policy.

36.     As a result of Markel's breach and repudiation of its obligations under the Management Liability Policy, the Gleasons have been and will be damaged by reason of having to pay their own attorneys' fees, expenses and costs of court. Additionally, in the unlikely event OIC Holdings receives a judgment on any of the allegations in the Lawsuit, the Gleasons will be further damaged by having to pay such judgment without indemnification by Markel against at least certain of such damages, if not all such damages.

## VIII.
## VIOLATION OF CHAPTERS 541 AND 542
## OF THE TEXAS INSURANCE CODE

37.     The Gleasons re-allege and incorporate by reference the factual allegations above.

38.     While Markel has specifically agreed that the Gleason's are "**Insured Persons**" under the D&O Coverage, it nevertheless denied any responsibility to provide coverage to the Gleasons.

39.     When providing Markel with a copy of the Original Petition in the Lawsuit, the Gleasons' lawyer specifically pointed out to Markel that (a) the Lawsuit contained specific allegations that Tom Gleason committed certain alleged acts and omissions in his capacity as President and Chief Executive Officer of

Oregon Ice Cream, and (b) there were multiple allegations of acts and omissions in the Lawsuit that, under a liberal interpretation of such allegations, the Gleasons could have committed only in their capacity as officers of Oregon Ice Cream. Markel acknowledged in its letter denying coverage that it understood what the Gleasons' lawyer was pointing out. Markel nevertheless ignored these points.

40.     Markel and its affiliates have been writing insurance policies and defending lawsuits throughout the United States for a substantial number of years. To write appropriate policies and to ensure that it is properly performing its duties under such policies, Markel undoubtedly ensures that it is up to date on the applicable laws in each state relating to such duties. It does this by, among other things, hiring intelligent and capable claims adjusters and attorneys. As a result of Markel's efforts to be knowledgeable on what the law requires with respect to its duties, Markel is fully aware, among other things, that:

- When determining if a duty to defend exists, Markel must act as if all the facts alleged in the plaintiff's petition against the policyholder are true, and Markel's task is solely to determine if the claims fall within the scope of the policy coverage based on such facts.

- The factual allegations within a petition are liberally interpreted when determining if a petition alleges facts that potentially state a claim within the coverage of a policy for purposes of the duty to defend.

- Any doubt as to whether the allegations state a claim within the coverage of the policy is resolved in the policyholder's favor.

- The focus of the inquiry of whether a duty to defend is on the facts alleged, not the legal theories asserted.

41. Despite this knowledge and despite acknowledging specific allegations that mandated that Markel defend the Gleasons in the Lawsuit, Markel made the determination to come up with and assert a faulty interpretation of the allegations in the Original Petition so that it could attempt to deny its duties to the Gleasons.

42. Specifically, Markel's interpretation requires that everyone accept that OIC Holdings' allegations against "Tom Gleason," "Julie Gleason" and "the Gleasons" in the Original Petition can only be interpreted to be against them in their capacity as sellers of Cornerstone and DPT. That interpretation ignores the specific allegation that Tom Gleason committed acts and omissions as an officer of Oregon Ice Cream. That interpretation ignores the fact that Julie Gleason did not own shares in Cornerstone or a membership interests in DPT. That interpretation ignores that Julie Gleason could only owe duties or obligations, if at all, in her capacity as an officer of Oregon Ice Cream. That interpretation ignores the requirement that Markel give a liberal interpretation to the allegations in the Lawsuit in determining whether coverage exists. That interpretation ignores the requirement that Markel resolve any doubt about coverage in favor of the Gleasons. That interpretation is simply erroneous and Markel knew it.

**PLAINTIFFS' ORIGINAL PETITION - PAGE 15**

43.    The denial of coverage by Markel was therefore with the specific knowledge that it was improper. Markel undoubtedly believed that the Gleasons would not look further at the policy or allegations and merely accept Markel's interpretation of the denial of coverage.

44.    Markel's actions constitute a knowing misrepresentation to the Gleasons of facts and policy provisions relating to the coverage at issue. Markel's actions also compelled the Gleasons to institute this suit to recover amounts now due to them as a result of Markel's refusal to defend them in the Lawsuit. Markel has therefore violated at least Sections 541.052, 541.060, 541.061 and 542.003 of the Texas Insurance Code.

45.    Markel's refusal to timely acknowledge the Gleasons' claim and to defend the Gleasons against the allegations made in the Lawsuit also constitutes a violation of Sections 542.051, 542.055 and 542.056 of the Texas Insurance Code.

46.    Specifically, Markel has failed and refused and continues to fail and refuse to make prompt payment of costs and attorneys' fees that are clearly due and owing under the D&O Coverage of the Management Liability Policy.

47.    The Gleasons are therefore entitled to recover the attorneys' fees, expenses and costs of court they have expended to defend themselves in the Lawsuit, as well as any payment they may have to make for any settlement or

judgment that may be rendered on the allegations covered by the Management Liability Policy.

48.     The Gleasons are further entitled to recover 18% penalties on the attorneys' fees, expenses and costs of court they are incurring in the Lawsuit, as well as the attorneys' fees they have and will expend in enforcing Markel to comply with its obligations under the Management Liability Policy.

## IX.
## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

49.     The Gleasons re-allege and incorporate by reference the factual allegations above.

50.     The Gleasons are "Insureds" under the Management Liability Policy. Markel accordingly owes each of the Gleasons a duty of good faith and fair dealing.

51.     Markel breached its duty of good faith and fair dealing by failing and refusing to defend the Gleasons in the Lawsuit without a reasonable basis. Markel denial of all coverage, and therefore of its obligation to ultimately indemnify the Gleasons from at least certain of the damages in the Lawsuit without a reasonable basis, is also a breach of this duty.

52.     The Gleasons have been damaged as a result of Markel's bad faith denial of a defense and the repudiation of its indemnification obligation under

D&O Coverage of the Management Liability Policy. The Gleasons therefore seek their attorneys' fees, expenses and costs of court expended in defending themselves in the Lawsuit, as well as recovery of any payment they may have to make for any settlement or judgment that may be rendered on the allegations covered by the Management Liability Policy.

## X.
## EXEMPLARY AND ADDITIONAL DAMAGES

53.    The Gleasons re-allege and incorporate by reference the factual allegations above.

54.    Markel knew that the bases for its denial of defense to the Gleasons and its repudiation of its indemnification obligation under the Management Liability Policy were incorrect. Markel nevertheless denied such defense and repudiated its indemnification obligation intentionally or through gross negligence. Accordingly, the Gleasons are entitled to recover exemplary damages from Markel.

55.    Markel's violations of Section 541 of the Texas Insurance Code were knowingly committed. The Gleasons are therefore entitled to recover three times the amount of their actual damages.

## XI.
## ATTORNEYS' FEES, COSTS AND INTEREST

56.   The Gleasons re-allege and incorporate by reference the factual allegations above.

57.   The Gleasons presented the Lawsuit to Markel and requested that it fulfill its obligations to defend and indemnify the Gleasons therein. Despite such presentment, Markel has not performed its obligations under the Management Liability Policy and instead has specifically refused to perform its obligations under that Policy.

58.   The Gleasons are therefore entitled to recover the costs and attorneys' fees they have and will incur in this proceeding, as well as all appeals, pursuant Chapter 38 of the Texas Civil Practices and Remedies Code.

59.   The Gleasons also seek prejudgment and post judgment interest at the maximum legal rate on the money due and owing.

## XII.
## REQUEST FOR DISCLOSURE

60.   The Gleasons request that Markel, pursuant to Rule 194 of the Texas Rules of Civil Procedure, disclose the information or material described in Rule 194.2 within 50 days of the day of service of this Original Petition.

## XIII.
## PRAYER

WHEREFORE, Tom Gleason and Julie Gleason request judgment against Markel American Insurance Company awarding Tom Gleason and Julie Gleason all damages sustained as a result of Markel American Insurance Company's actions and omissions, exemplary damages and/or additional damages as alleged, prejudgment and post judgment interest, their reasonable attorney's fees and costs, and such other and further relief to which they may show themselves entitled.

Respectfully Submitted,

/s/ *Bryan Haynes*

**BRYAN HAYNES**
State Bar No.09283520
Email: Bryan.Haynes@solidcounsel.com
**SCHEEF & STONE, LLP**
500 North Akard Street
Suite 2700
Dallas, Texas 75201
(214) 706-4200 Phone
(214) 706-4242 Fax

**J. MITCHELL LITTLE**
State Bar No. 24043788
Email: Mitch.Little@solidcounsel.com
**ANDREA K. BOURESSA**
State Bar No. 24061549
andrea.bouressa@solidcounsel.com
**SCHEEF & STONE, LLP**
2601 Network Blvd., Suite 102
Frisco, Texas 75034
(214) 472-2100 Telephone
(214) 472-2150 Fax

**ATTORNEYS FOR PLAINTIFFS**
**TOM GLEASON AND JULIE GLEASON**

---

**PLAINTIFFS' ORIGINAL PETITION - PAGE 20**

# CIVIL CASE INFORMATION SHEET

Filed: 2/3/2017 3:15:36
PM Lynne Finley
District Clerk
Collin County, Texas
By Pam English Deputy

CAUSE NUMBER *(FOR CLERK USE ONLY):* 366-00541-2017          COURT *(FOR CLERK USE ONLY):*

STYLED TOM GLEASON AND JULIE GLEASON V. MARKEL AMERICAN INSURANCE COMPANY

(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson) Envelope ID: 15125849

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing.

| 1. Contact information for person completing case information sheet: | | Names of parties in case: | Person or entity completing case information sheet is: |
|---|---|---|---|
| Name:<br><br>Bryan Haynes | Email:<br><br>bryan.haynes@solidcounsel.com | Plaintiff(s)/Petitioner(s):<br><br>Tom Gleason and Julie Gleason | [x] Attorney for Plaintiff/Petitioner<br>☐ *Pro Se* Plaintiff/Petitioner<br>☐ Title IV-D Agency<br>☐ Other: |
| Address:<br><br>500 North Akard, Suite 2700 | Telephone:<br><br>214-706-4200 | | Additional Parties in Child Support Case: |
| City/State/Zip:<br><br>Dallas, Texas 75201 | Fax:<br><br>214-706-4242 | Defendant(s)/Respondent(s):<br><br>Markel American Insurance<br><br>Company | Custodial Parent:<br><br>Non-Custodial Parent: |
| Signature:<br><br>/s/ Bryan Haynes | State Bar No:<br><br>09283520 | [Attach additional page as necessary to list all parties] | Presumed Father: |

**2. Indicate case type, or identify the most important issue in the case** *(select only 1):*

| Civil | | | Family Law | |
|---|---|---|---|---|
| **Contract** | **Injury or Damage** | **Real Property** | **Marriage Relationship** | **Post-judgment Actions (non-Title IV-D)** |
| *Debt/Contract*<br>☐ Consumer/DTPA<br>☐ Debt/Contract<br>☐ Fraud/Misrepresentation<br>☐ Other Debt/Contract:<br><br>*Foreclosure*<br>☐ Home Equity—Expedited<br>☐ Other Foreclosure<br>☐ Franchise<br>[x] Insurance<br>☐ Landlord/Tenant<br>☐ Non-Competition<br>☐ Partnership<br>☐ Other Contract: | ☐ Assault/Battery<br>☐ Construction<br>☐ Defamation<br>*Malpractice*<br>☐ Accounting<br>☐ Legal<br>☐ Medical<br>☐ Other Professional<br>Liability:<br><br>☐ Motor Vehicle Accident<br>☐ Premises<br>*Product Liability*<br>☐ Asbestos/Silica<br>☐ Other Product Liability<br>List Product:<br><br>☐ Other Injury or Damage: | ☐ Eminent Domain/<br>Condemnation<br>☐ Partition<br>☐ Quiet Title<br>☐ Trespass to Try Title<br>☐ Other Property:<br><br>**Related to Criminal Matters**<br>☐ Expunction<br>☐ Judgment Nisi<br>☐ Non-Disclosure<br>☐ Seizure/Forfeiture<br>☐ Writ of Habeas Corpus—<br>Pre-indictment<br>☐ Other: | ☐ Annulment<br>☐ Declare Marriage Void<br>*Divorce*<br>☐ With Children<br>☐ No Children<br><br>**Other Family Law**<br>☐ Enforce Foreign<br>Judgment<br>☐ Habeas Corpus<br>☐ Name Change<br>☐ Protective Order<br>☐ Removal of Disabilities<br>of Minority<br>☐ Other: | ☐ Enforcement<br>☐ Modification—Custody<br>☐ Modification—Other<br>**Title IV-D**<br>☐ Enforcement/Modification<br>☐ Paternity<br>☐ Reciprocals (UIFSA)<br>☐ Support Order<br><br>**Parent-Child Relationship**<br>☐ Adoption/Adoption with<br>Termination<br>☐ Child Protection<br>☐ Child Support<br>☐ Custody or Visitation<br>☐ Gestational Parenting<br>☐ Grandparent Access<br>☐ Parentage/Paternity<br>☐ Termination of Parental<br>Rights<br>☐ Other Parent-Child: |
| **Employment** | **Other Civil** | | | |
| ☐ Discrimination<br>☐ Retaliation<br>☐ Termination<br>☐ Workers' Compensation<br>☐ Other Employment: | ☐ Administrative Appeal<br>☐ Antitrust/Unfair<br>Competition<br>☐ Code Violations<br>☐ Foreign Judgment<br>☐ Intellectual Property | ☐ Lawyer Discipline<br>☐ Perpetuate Testimony<br>☐ Securities/Stock<br>☐ Tortious Interference<br>☐ Other: | | |
| **Tax** | **Probate & Mental Health** | | | |
| ☐ Tax Appraisal<br>☐ Tax Delinquency<br>☐ Other Tax | *Probate/Wills/Intestate Administration*<br>☐ Dependent Administration<br>☐ Independent Administration<br>☐ Other Estate Proceedings | ☐ Guardianship—Adult<br>☐ Guardianship—Minor<br>☐ Mental Health<br>☐ Other: | | |

**3. Indicate procedure or remedy, if applicable** *(may select more than 1):*

| | | |
|---|---|---|
| ☐ Appeal from Municipal or Justice Court<br>☐ Arbitration-related<br>☐ Attachment<br>☐ Bill of Review<br>☐ Certiorari<br>☐ Class Action | ☐ Declaratory Judgment<br>☐ Garnishment<br>☐ Interpleader<br>☐ License<br>☐ Mandamus<br>☐ Post-judgment | ☐ Prejudgment Remedy<br>☐ Protective Order<br>☐ Receiver<br>☐ Sequestration<br>☐ Temporary Restraining Order/Injunction<br>☐ Turnover |

**4. Indicate damages sought** *(do not select if it is a family law case):*

☐ Less than $100,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees
☐ Less than $100,000 and non-monetary relief
☐ Over $100, 000 but not more than $200,000
☐ Over $200,000 but not more than $1,000,000
[x] Over $1,000,000

Rev 2/13

**CT Packing Slip**

CT Corporation

| | |
|---|---|
| **UPS Tracking # :** | 1Z0399EX0108647762 |
| **Created By :** | Nitesh Chand |
| **Created On :** | 02/09/2017 03:26 PM |
| **Recipient :** | |

> **Kathleen Sturgeon**
>
> Title :  --
> Customer :  Markel Midwest, Inc.
> Address :  10 Parkway North
> Email :  LegalRegulatory@markelcorp.com
> Phone :  847-572-6387     Fax :  -

**Package Type :** Envelope
**Items shipped :** 2

RECEIVED
FEB 13 2017
LAW DEPT.

| Log # | Case # | Entity Name |
|---|---|---|
| 530661465 | 31CV201790010300 | Essentia Insurance Company |
| 530663506 | 366005412017 | MARKEL AMERICAN INSURANCE COMPANY |

100% Recycled fiber

International Shipping Notice -- Carriage hereunder may be subject to the rules relating to liability and other terms and/or conditions established by the Convention for the Unification of Certain Rules Relating to International Carriage by Air (the "Warsaw Convention") and/or the Convention on Contract for the International Carriage of Goods by Road (the "CMR Convention"). These commodities, technology or software were exported from the U.S. in accordance with the Export Administration Regulations. Diversion contrary to U.S. law prohibited.

1/14    BL  United Parcel Service, Louisville,

MARA VELASCO
21493233601
CT - DALLAS SOP TEAM
1999 BRYAN STREET
DALLAS  TX 75201

**1.0 LBS    LTR**          **1 OF 1**

**SHIP TO:**
KATHLEEN  STURGEON
8475726387
MARKEL MIDWEST, INC.
10 PARKWAY NORTH
**DEERFIELD  IL 60015**



**IL 600 9-01**



**UPS NEXT DAY AIR**          **1**
TRACKING #: 1Z 039 9EX 01 0864 7762

BILLING: P/P
DESC: SOP Documents

Reference No.1: SOP/1403403/530661465/Mara Velasco

X0L 17.01.28     NV45 84.0A 01/2017



Lynne Finley
District Clerk
Collin County, Texas
By Candice Noe-Hill Deputy
Envelope ID: 15359916

THE STATE OF TEXAS
CIVIL CITATION
CASE NO.366-00541-2017

Tom Gleason,Julie Gleason vs. Markel American
Insurance Company

In the 366th District Court

Of Collin County, Texas

NOTICE TO DEFENDANT: "You have been sued. You may employ an attorney. If you or your attorney
do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next
following the expiration of twenty days after you were served this citation and petition, a default judgment
may be taken against you."

TO:  Markel American Insurance Company
RegAgentCT Corporation System
1999 Bryan StreetSuite 900
Dallas TX  75201, Defendant

GREETINGS:  You are commanded to appear by filing a written answer to **Plaintiff's Original Petition** at
or before ten o'clock A.M. on the Monday next after the expiration of twenty days after the date of service of
this citation before the Honorable 366th District Court of Collin County, Texas at the Courthouse of said
County in McKinney, Texas.

Said Plaintiff's Petition was filed in said court, by Bryan Haynes  500 N Akard Suite 2700  Dallas TX 75201
(Attorney for Plaintiff or Plaintiffs), on  February 03, 2017, in this case, numbered 366-00541-2017 on the
docket of said court.

The natures of Plaintiff's demand is fully shown by a true and correct copy of **Plaintiff's Original Petition**
accompanying this citation and made a part hereof.

Issued and given under my hand and seal of said Court at McKinney, Texas, on this the 6th day of February,
2017.

ATTEST: Lynne Finley, District Clerk
Collin County, Texas
Collin County Courthouse
2100 Bloomdale Road
McKinney, Texas 75071
972-548-4320, Metro 972-424-1460 ext. 4320

Signed 2/6/2017 9:20:33 AM

By: _Pam English_ , Deputy
Pam English

**The law prohibits the Judge and the clerks from giving legal advice, so please do not seek legal advice.
Any questions you have should be directed to an attorney.**

** SEE ATTACHED **
***AFFIDAVIT ***

** SEE ATTACHED **
***AFFIDAVIT ***

CAUSE NO. 366-00541-2017

| | | |
|---|---|---|
| TOM GLEASON AND JULIE GLEASON | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| **Plaintiff(s),** | § | |
| VS. | § | 366TH JUDICIAL DISTRICT |
| | § | |
| MARKEL AMERICAN INSURANCE | § | |
| COMPANY | § | |
| | § | |
| **Defendant(s).** | § | COLLIN COUNTY, TEXAS |

## RETURN OF SERVICE

Came to my hand on **Wednesday, February 8, 2017 at 5:00 PM,**
Executed at: **1999 BRYAN STREET, SUITE 900, DALLAS, TX 75201**
within the county of **DALLAS** at **10:00 AM**, on **Thursday, February 9, 2017,**
by individually and personally delivering to the within named:

### MARKEL AMERICAN INSURANCE COMPANY

By delivering to its **Registered Agent, CT CORPORATION SYSTEM**
By delivering to its **Authorized Agent, TERRI THONGSAVAT**
a true copy of this

### CIVIL CITATION, PLAINTIFF'S ORIGINAL PETITION and
### IVIL CASE INFORMATION SHEET

having first endorsed thereon the date of the delivery.

**BEFORE ME,** the undersigned authority, on this day personally appeared **Danny L. Haney** who after being duly sworn on oath states: "My name is **Danny L. Haney**. I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Texas. I have personal knowledge of the facts and statements contained in this affidavit and aver that each is true and correct. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude. I am familiar with the Texas Rules of Civil Procedure, and the Texas Practice and Remedies Codes as they apply to service of process. I am approved by the Supreme Court of Texas, Misc. Docket No. 05-9122 under Rule 103 and 501.2 of the TRCP to deliver citations and other notices from any District, County and Justice Courts in and for the State of Texas."

Danny L. Haney

Of:     **Dallas County**

By:

Authorized Person - SCH566 - Exp 03/31/17

Subscribed and Sworn to by Danny L. Haney, Before Me, the undersigned authority, on this
13th day of February, 2017.

JEFFREY E. KIRKPATRICK
Notary Public
STATE OF TEXAS
ID #6340766
My Comm. Exp. Oct. 28, 2017

Notary Public in and for the State of Texas