# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| **TOM GLEASON AND JULIE GLEASON,** | § | |
| | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:17-cv-00163** |
| | § | |
| **MARKEL AMERICAN INSURANCE COMPANY,** | § | |
| | § | |
| | § | |
| **Defendant.** | § | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

Plaintiffs Tom Gleason and Julie Gleason (the "Gleasons") file this First Amended Complaint against Defendant Markel American Insurance Company ("Markel") and respectfully show the Court as follows:

## I.
## PARTIES

1.  The Gleasons are individuals residing in McKinney, Texas.

2.  Markel is a Virginia corporation that operates and provides insurance in the State of Texas. Markel has been served and removed this matter to this Court.

## II.
## JURISDICTION AND VENUE

3.  Markel is registered with the Texas Department of Insurance to conduct business in Texas. Markel otherwise conducts business in Texas by, among other things, marketing and selling insurance policies to Texas residents. Markel also maintains at least two offices in Texas at (1) One Legacy Circle, 7500 Dallas Parkway, Suite 400, Plano, Texas 75024, and (2) 12222

Merit Drive, Suite 880, Dallas, Texas 75251 This Court therefore has personal jurisdiction over Markel.

4.      The amount sought by the Gleasons is within the jurisdictional limits of this Court.

5.      Markel is subject to personal jurisdiction in this District and it is therefore a resident of this District. *See,* 28 U.S.C. § 1391(c)(2). Venue is therefore appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(1). Additionally, a substantial part of the events or omissions giving rise to the claims asserted herein occurred in the Eastern District of Texas. Venue is therefore also appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2)..

### III.
### FACTUAL BACKGROUND

**A.      The Company.**

6.      Prior to October 1, 2014, Tom Gleason, Alfred Gleason and Janet Gleason owned Cornerstone Partners, Inc. ("Cornerstone") and DPT, LLC ("DPT"). Cornerstone and DPT in turn owned Oregon Ice Cream, LLC ("OICLLC").

7.      OICLLC manufactures, markets and sells three primary brands of frozen desserts: Julie's Organic Ice Cream, Alden's Ice Cream, and Cascade Glacier.

**B.      The D&O Coverage.**

8.      In 2013, OICLLC purchased a For Profit Management Liability Policy, Policy No. ML-809795, from Markel (the "Management Liability Policy"). The Management Liability Policy includes Directors and Officers and Company Liability coverage under

Form/Endorsement MML 1001 05 10 (the "D&O Coverage"). The D&O Coverage covers "**Claims**"[1] made during the **"Policy Period."**

9.     The "**Policy Period**" is defined in Item 2. of the Declarations to the Management Liability Policy to run from August 31, 2013 to August 31, 2014. The **"Policy Period"** was extended to October 2, 2020 through a "Run-Off Endorsement," Policy Number ML815039 / Endorsement MML 1220 05 10 (Policy Change No. 2) purchased by OICLLC.

10.     The D&O Coverage provides the following coverage grant:

**SECTION** I - **INSURING AGREEMENTS**

**A.     INSURED PERSON LIABILITY COVERAGE**

The Insurer shall pay on behalf of the **Insured Persons** all **Loss** for which the **Insured Persons** are not indemnified by the **Company** and which the **Insured Persons** become legally obligated to pay on account of any **Claim** first made against **Insured Persons**, individually or otherwise, during the **Policy Period** or the **Extended Reporting Period**, if exercised, for a **Wrongful Act** taking place before or during the **Policy Period**.

11.     Section II.D. of the General Terms and Conditions of the Management Liability Policy defines "**Company**" to include, in relevant part, "the **Parent Company** and its **Subsidiarie**s ..." "**Parent Company**" is in turn defined in Section II.R. to mean "the organization stated in Item 1 of the Declarations." Item 1 of the Declarations identifies the "**Parent Company**" as "Oregon Ice Cream, LLC," defined herein as OICLLC.

12.     Section III.A. of the D&O Coverage defines the term "**Claim**" to include, in relevant part, the following:

**Claim** means:

---

[1] Terms that are both bold and within quotation marks in this First Amended Complaint have the meaning and definition contained in the Management Liability Policy, even if the definition stated in this First Amended Petition is incomplete or incorrect.

* * *

**2.**    a civil proceeding against any **Insured** commenced by the service of a complaint or similar pleading upon such **Insured;**

* * *

for a **Wrongful Act,** including any appeal therefrom.

13.    Section III.D. of the D&O Coverage defines the term "**Insured**" to include "**Insured Persons**." Section III.C. of the D&O Coverage in turn defines, through Section B.1. of Form/Endorsement MML 1201 01 11 (Policy Change Number 10), "**Insured Persons**" to include, in relevant part, the following:

**Insured Person,** whether in the singular or plural, means:

**1.**    Any natural person who was, now is or shall during the **Policy Period** become a duly elected or appointed director, trustee, governor, **Manager,** officer, advisory director, or member of a duly constituted committee or board of the **Company,** their functional equivalent or their foreign equivalent;

* * *

14.    Section III.F. of the D&O Coverage defines the term "**Loss**" to include, in relevant part, the following:

**Loss** means the total amount the **Insured** becomes legally obligated to pay on account of covered **Claims** made against them, including, but not limited to, damages (including back pay, front pay and punitive, exemplary or multiple damages), judgments, any award of pre-judgment and post-judgment interest with respect to covered damages, settlements, **Claim Expenses** and civil money penalties assessed against an **Insured** … (ii) for a violation of any federal, state, local or foreign law if such violation is not knowing or willful.

The insurability of such punitive, exemplary or multiple damages and civil money penalties shall be determine under the internal laws of any applicable jurisdiction most favorable to the **Insured**, including without limitation the jurisdiction in which the **Company**, the **Insured Person**, the Insurer, this policy or such **Claim** is located.

* * *

15.     Section III.K. of the D&O Coverage defines the term "**Wrongful Act**" to include, in relevant part, the following:

> **Wrongful Act** means:
>
> **1.**     any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty by any **Insured Person** in their capacity as such  . . .**;** or
>
> **2.**     any matter claimed against any **Insured Person** solely by reason of their serving in such capacity …

16.     Section IV.A. of the General Terms and Conditions of the Management Liability Policy provides the following relevant language with respect to Markel's duty to defend the Gleasons:

> **A.     DEFENSE AND SETTLEMENT**
>
> **1.**     If duty to defend coverage is purchased with respect to any Coverage Part as stated in the Coverage Schedule in Item 5 of the Declarations:
>
> > a.     The Insurer shall have the right and duty to defend any Claim covered under such Coverage Part, even if any of the allegations are groundless, false or fraudulent. The Insurer's duty to defend any Claim shall cease upon exhaustion of the Limit of Liability applicable to such Claim.

17.     Section 5. Coverage Schedule in the Declarations reflects that the duty to defend was purchased from Markel for the D&O Coverage. Markel must therefore defend any claim covered under the D&O Coverage.

C.      **The Transaction.**

18.     On or about October 1, 2014, OIC Holdings, LLC ("OIC Holdings") purchased the equity interests Tom Gleason, Alfred Gleason and Janet Gleason owned in Cornerstone and DPT (the "Transaction"). Julie Gleason also executed certain of the Transaction documents. However, Julie Gleason was not a shareholder or member in Cornerstone, DPT or OICLLC.

19.     Tom Gleason was the President and Chief Executive Officer of OICLLC prior to and throughout the negotiations with OIC Holdings leading to the Transaction. Julie Gleason was OICLLC's Vice President prior to and throughout the negotiations with OIC Holdings leading to the Transaction.

D.      **The Underlying Lawsuit.**

20.     On or about December 15, 2015, OIC Holdings filed a lawsuit styled *OIC Holdings, LLC v. Tom Gleason and Julie Gleason*; Cause No. 366-05061-2015; In the 366th Judicial District Court of Collin County, Texas (the "Underlying Lawsuit"). The Gleason's were served with the Original Petition in the Underlying Lawsuit in late December 2015. This pleading was delivered to Markel in or about January 2015.

21.     On or about June 8, 2016, OIC Holdings filed and served a First Amended Petition in the Underlying Lawsuit adding further allegations against the Gleasons. This pleading was delivered to Markel on or about February 8, 2017. Demand for defense and indemnification for the allegations in the First Amended Petition has been made on Markel by the Gleasons.

22.     The Original Petition and First Amended Petition in the Underlying Lawsuit (collectively, the "Petitions") each assert that "Tom Gleason" and "the Gleasons," inclusive of Julie Gleason, made and committed various purported "errors, misstatements, misleading statements, acts, omissions, acts of neglect, and/or breaches of duty" (collectively, the "Alleged

Acts" [2]). The Petitions claim that at least certain of the Alleged Acts were specifically committed by Tom Gleason in his capacity as an officer ("President and Chief Executive Officer") of OICLLC. The Petitions further allege that "Tom Gleason," and "the Gleasons" committed other Alleged Acts without specifying the capacity in which he or they allegedly committed such Alleged Acts.

23.     Based on the allegations in the Petitions, OIC Holdings claims that the Gleasons damaged it by reason of purported breach of contract, fraud, negligent misrepresentation, violation of Chapter 27 of the Texas Business and Commerce Code and violation of the Texas Securities Act.

### E.     <u>The Denial of Coverage</u>.

24.     On or about January 22, 2016, the Gleasons sought a defense of and indemnification from the allegations in the Underlying Lawsuit by having their lawyer send a copy of the Original Petition to Markel's lawyer.

25.     On or about March 15, 2016, Markel, through its lawyer, acknowledged in writing that it was in receipt of the Original Petition. Markel further specifically acknowledged in writing that the Gleason's were insureds under the D&O Coverage. However, Markel denied that the D&O Coverage provided any coverage to the Gleasons for the allegations in the Underlying Lawsuit.

26.     Markel has not yet advised the Gleasons whether it will accept the defense of the allegations contained in or indemnify the Gleasons for any settlements or judgments resulting

---

[2] *See*, Section III.K. of the D&O Coverage defining "**Wrongful Act**" to include, in relevant part, "*any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty* by any **Insured Person** in their capacity as such . . ." (italicized emphasis added). As used herein, Alleged Acts has the same meaning as just the italicized words in the definition of "**Wrongful Act**" above. The definition of Alleged Acts does not include the capacity in which such acts are alleged to have been committed, which is dealt with as a separate issue in this Amended Complaint.

from the First Amended Petition filed in the Underlying Lawsuit. The Gleasons anticipate, however, that Markel will not change its position regarding coverage based on the allegations in the First Amended Petition and will instead continue to deny its obligations to the Gleasons under the Management Liability Policy. As of the date this Second Amended Complaint, Markel had not notified the Gleasons of any change in its coverage position based on the allegations in the First Amended Petition in the Underlying Suit.

27.     Since at least March 15, 2016, Markel has continuously failed and refused to provide a defense to the Gleasons in the Underlying Lawsuit. Markel has otherwise anticipatorily repudiated its obligation to indemnify the Gleasons for any settlement or judgment that may be rendered in the Underlying Lawsuit.

## IV.
## CONDITIONS PRECEDENT

28.     All conditions precedent to the bringing of this action have occurred, been excused, or performed.

## V.
## BREACH OF CONTRACT / ANTICIPATORY REPUDIATION

29.     The Gleasons re-allege and incorporate by reference the factual allegations above.

**A.     The Markels are "Insured Persons" under the D&O Coverage.**

30.     At all times relevant to the causes of action alleged in the Petitions, Tom Gleason was the Chief Executive Officer and President of the "**Company**." He is therefore an **"Insured Person"** under the D&O Coverage.

31.     At all times relevant to the causes of action alleged in the Petitions, Julie Gleason was a Vice President of the "**Company.**" She is therefore an **"Insured Person"** under the D&O Coverage.

32. Markel has admitted in a letter from its coverage counsel that both Tom Gleason and Julie Gleason qualify as **"Insured Persons"** under the D&O Coverage with respect to the Underlying Lawsuit.

33. Tom Gleason and "the Gleasons," inclusive of Julie Gleason, are otherwise "**Insured Persons**" under the D&O Coverage.

34. As "**Insured Persons**," the Gleasons are, at a minimum, intended third-party beneficiaries of the Management Liability Policy and the D&O Coverage thereunder. They are therefore entitled to enforce its terms and sue for Markel's breach of and anticipatory repudiation of such policy.

### B.    The Underlying Lawsuit is a "Claim" under the D&O Coverage.

35. The Underlying Lawsuit is a civil proceeding against the Gleasons.

36. The Underlying Lawsuit was commenced by the service of an Original Petition on each of the Gleasons.

37. Each of the Petitions are pleadings similar to a "complaint."

38. The Petitions each assert Alleged Acts against Tom Gleason in his capacity as President and Chief Executive Officer of OICLLC.

39. President and Chief Executive Officer are officer positions within OICLLC.

40. The Petitions also each assert other Alleged Acts against "Tom Gleason" and "the Gleasons," inclusive of Julie Gleason, without specifying the capacity in which OIC Holdings contends "Tom Gleason" or "the Gleasons" committed such Alleged Acts. As discussion in more detail in Section V.E. below, at least certain of these allegations must be read as alleging that "Tom Gleason" and "the Gleasons" committed Alleged Acts in their capacities as officers of OICLLC. Accordingly, the Petitions assert alleged "**Wrongful Acts.**"

41.     As discussed in more detail in Section V.C. and V.D. below, the Underlying Lawsuit was (a) commenced and first reported to Markel during the "**Policy Period**" and (b) asserts that Alleged Acts were committed by Tom Gleason and Julie Gleason during the "**Policy Period.**"

42.     A "**Claim**" by OIC Holdings has been made against the Gleasons under the D&O Coverage based on the foregoing, as well as other allegations in the Petitions and terms under Management Liability Policy.

### C.     The "Claim" was first made and reported to Markel during the "Policy Period" or "Extended Reporting Period."

43.     The Underlying Lawsuit was filed on December 10, 2015.

44.     The Gleasons were served with the Original Petition in the Underlying Lawsuit in or about December, 2015.

45.     The Gleasons gave notice of the Underlying Lawsuit to Markel by delivering a copy of the Original Petition to Markel's counsel on or about January 22, 2016.

46.     The Gleason's were served, through their counsel, with the First Amended Petition in the Underlying Lawsuit on or about June 8, 2016.

47.     The Gleasons provided a copy of the First Amended Petition to counsel for Markel on or about February 8, 2017.

48.     The Underlying Lawsuit is a "**Claim**" which was first made during the "**Policy Period**."

### D.     The Petitions assert that Alleged Acts occurred during the "Policy Period."

49.     Paragraphs 20 in each of the Petitions allege that the negotiations leading to the Transaction began in February 2014.

---

50.     Paragraphs 10 and 11 of each of the Petitions allege that the "Purchase Agreement" executed in connection with the Transaction was signed on September 25, 2014 and that the effective date of the sale of the interests involved in the Transaction was October 1, 2014.

51.     Other allegations in each of the Petitions further specifically assert Alleged Acts occurred during 2014.

52.     The majority, if not all, of the Alleged Acts asserted in each of the Petitions occurred during the negotiations leading to and through the completion of the Transaction, or between February 2014 and October 31, 2014.

53.     The majority, if not all, of the Alleged Acts asserted in each of the Petitions therefore occurred, if at all, during the "**Policy Period**."

**E.      The Petitions assert that Tom Gleason and "the Gleasons" committed alleged "Wrongful Acts."**

**(i)      The Underlying Lawsuit specifically alleges that Tom Gleason commited Alleged Acts as President and Chief Executive Officer of OICLLC.**

54.     Paragraph 33. of the Original Petition ("Paragraph 33.") and paragraph 35. of the First Amended Petition ("Paragraph 35.") (collectively, the "Officer Specific Paragraphs") each specifically assert that Tom Gleason oversaw the preparation of OIC's balance sheet as of September 30, 2014 (the "Balance Sheet") in his capacity as the President and Chief Executive Officer of OICLLC.

55.     The Officer Specific Paragraphs further allege, twice, that Tom Gleason also oversaw the preparation of OIC's financial statements (the "Financial Statements"). In the context of all of the allegations in the Officer Specific Paragraphs, and pursuant to Texas law

such as is quoted in paragraph 61. below, these allegations must be read in context with the other allegations in the Officer Specific Paragraphs, given liberal interpretation, and accordingly be read as alleging that Tom Gleason oversaw the preparation of the Financial Statements in his capacity as President and/or Chief Executive Officer of OICLLC.

56.     The alleged oversight of the Balance Sheet and Financial Statements are each, at a minimum, alleged "acts," as that term is used in Section III.K.1. of the D&O Coverage, and as that term is otherwise ordinarily defined.

57.     The Officer Specific Paragraphs further allege that "OICLLC used [the Balance Sheet] as the starting point for preparing its calculation of the actual working capital of the Company as of September 30, 2014" and that "[d]uring the course of preparing its calculation of working capital, [OIC Holdings] discovered several instances where [OIC's] financial statements ... were not prepared in accordance with GAAP."

58.     The Officer Specific Paragraphs further allege that, as a result of the financial statements purportedly not being prepared in accordance with GAAP, OIC's Earnings Before Interest, Tax, Depreciation and Amortization ("EBITDA") as of September 30, 2014 should have been nearly $1.4 million less than what was actually reported.

59.     Among other allegations, the alleged oversight of the preparation of the Balance Sheet and the Financial Statements is an assertion of an Alleged Act by Tom Gleason as the President and Chief Executive Officer of OICLLC. Further, the allegations that EBITDA was allegedly substantially overstated as a result of the alleged failure to prepare the Financial Statements in accordance with GAAP are Alleged Acts under Section III.K.1. of the D&O Coverage. As Tom Gleason is alleged to have overseen the preparation of such Financial

Statements, the purported overstatement of EBITDA is also an alleged Alleged Act by Tom Gleason in his capacity as President and Chief Executive Officer of OICLLC.

60.     The foregoing, as well as other allegations in the Petitions, accordingly assert **"Wrongful Acts"** against Tom Gleason.

> **(ii)     Certain of the Alleged Acts alleged in the Underlying Lawsuit must be read as alleging that they were committed by Tom Gleason and the Gleasons as officers of OICLLC.**

61.     Texas law mandates that an insurer give the allegations in a petition liberal interpretation. Indeed, the Fifth Circuit, quoting Texas Supreme Court cases, has held that:

> All doubts regarding the duty to defend are resolved in favor of the insured. "Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, *potentially*, a case under the complaint within the coverage of the policy." In other words, if there is doubt as to whether "as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in insured's favor.

*Federal Ins. Co. v. Northfield Ins. Co.,* 837 F. 3d 548, 552 (5th Cir. 2016); *citing, King v. Dallas Fire Ins. Co.,* 85 S.W.3d 185, 187 (Tex. 2002), and *quoting, Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.,* 387 S.W.2d 22, 26 (Tex.1965)(emphasis added by 5th Circuit).

*62.*     Even this Court has specifically followed the Texas Supreme Court's holdings in the *King* and *Heyden Newport* cases. *See, Lawyers Title Ins. Corp. v. Graham Mortgage Corp.,* No. 4:09–cv–262, 2010 WL 2635074, at *1 (E.D.Tex. Apr. 16, 2010) (Mag. J. Mazzant), report and recommendation adopted, 2010 WL 2635089 (E.D. Tex. June 28, 2010) (J. Schneider).

63.     Numerous paragraphs in each of the Petitions in the Underlying Lawsuit specifically assert that "Thomas Gleason" (or "Tom Gleason" in the First Amended Petition") committed various Alleged Acts other than those in the Officer Specific Paragraphs. Many other

paragraphs in the Petitions assert that "the Gleasons," inclusive of Julie Gleason, committed several Alleged Acts. However, these paragraphs do not directly specify the capacity in which Tom Gleason or "the Gleasons" purportedly committed such Alleged Acts. Under Texas law, however, such asserted Alleged Acts must be read as asserting that Tom Gleason and "the Gleasons" committed such Alleged Acts at least in their capacities as officers of OICLLC.

64.     In the letter declining coverage in the Underlying Lawsuit, Markel claimed that the only capacity in which OIC Holdings was alleging that Tom Gleason or "the Gleasons" committed any Alleged Acts was in capacity he described as "sellers" of equity interests in Cornerstone and DPT. Markel's coverage position intentionally ignores long standing Texas law requiring Markel to read the allegations liberally and, if the allegations can be read to grant coverage, to read them as granting coverage.

65.     For example, the negligent misrepresentation cause of action incorporates the prior factual allegations in each of the Petitions. As discussed above, many of the factual allegations specifically assert Tom Gleason committed Alleged Acts in his capacity as an officer of OICLLC. Other allegations in the Petitions can be, and therefore must be read as asserting that "the Gleasons" committed Alleged Acts in their respective positions as officers of OICLLC. Accordingly, the negligent misrepresentation cause of action, among others, must be read to mean that OIC Holdings is seeking to recover from Tom Gleason and "the Gleasons" in their capacities as officers, *even* if those same allegations can also be read to mean that OIC Holdings may also be seeking to recover from them in any capacity that may not be covered under the D&O Coverage.

66.     The foregoing, as well as other allegations in the Petitions, accordingly assert **"Wrongful Acts"** against Tom Gleason and "the Gleasons," inclusive of Julie Gleason, in their

respective capacities as officers of OICLLC. All, or substantially all, such "**Wrongful Acts**" are alleged to have occurred during the "**Policy Period**."

      **F.**      <u>**Coverage exists under the D&O Coverage for the allegations in the Petitions.**</u>

67.      Based on the foregoing, as well as other allegations in the Petitions and terms of the Management Liability Policy, coverage exists under the D&O Coverage for at least certain of the allegations in the respective Petitions.

68.      The Gleasons provided Markel with timely notice of the Underlying Lawsuit, provided it with copies of each of the Petitions and requested that it act in accordance with its obligations under the Management Liability Policy.

69.      OICLLC is not providing either of the Gleasons with indemnification.

70.      As coverage exists under the Management Liability Policy, and particularly under the D&O Coverage, Markel has owed each of the Gleasons a duty to defend since the inception of the Underlying Lawsuit, and a duty to indemnify them against any "**Loss**."

71.      Despite its duty to defend the Gleasons, Markel has failed and specifically refused to fulfill this contractual obligation to do so. Instead, Markel has specifically denied that it owes either of the Gleasons a duty to defend either of them in the Underlying Lawsuit. Markel's actions constitute a breach of the Management Liability Policy.

72.      Additionally, despite its duty to indemnify the Gleasons for any "**Loss**." Markel has very clearly stated its intent to deny any covered "**Loss**" that may arise from any of OIC Holdings' allegations. Markel's actions constitute a repudiation of its indemnification obligations in the Management Liability Policy, and under the D&O Coverage in particular.

73.     As a result of Markel's breach and repudiation of its obligations under the Management Liability Policy, the Gleasons have been and will be damaged by reason of having to pay their own attorneys' fees, expenses and costs of court.

74.     In the unlikely event OIC Holdings receives a judgment on any of the allegations in the Underlying Lawsuit, or if the Gleasons reach a settlement of the Underlying Lawsuit, the Gleasons will be further damaged by having to pay such judgment or settlement without indemnification by Markel against "**Loss**."

## VI.
## VIOLATION OF CHAPTERS 541 AND 542
## OF THE TEXAS INSURANCE CODE

75.     The Gleasons re-allege and incorporate by reference the factual allegations above.

76.     While Markel has specifically agreed that the Gleason's are "**Insured Persons**" under the D&O Coverage, it nevertheless denied any responsibility to provide coverage to the Gleasons.

77.     When providing Markel with a copy of the Original Petition in the Underlying Lawsuit, the Gleasons' lawyer specifically pointed out to Markel that (a) the Underlying Lawsuit contained specific allegations that Tom Gleason committed certain alleged acts and omissions in his capacity as President and Chief Executive Officer of OIC, and (b) there were multiple allegations of acts and omissions in the Underlying Lawsuit that could be read as alleging that the Gleasons purportedly committed such acts and omissions in their capacity as officers of OICLLC. Markel acknowledged in its letter denying coverage that it understood what the Gleasons' lawyer was pointing out. Markel nevertheless intentionally ignored these points and refused to provide coverage under the Management Liability Policy.

78.     Markel and its affiliates have been writing insurance policies and defending lawsuits throughout the United States for a substantial number of years. To write appropriate policies and to ensure that it is properly performing its duties under such policies, Markel undoubtedly ensures that it, its employees and the attorneys who prepare and send denial or reservations of rights letters are up to date on the applicable coverage laws in each state in which they provide coverage, adjust claims or practice law, respectively. It does this by, among other things, hiring intelligent and capable claims adjusters and attorneys who should be knowledgeable on the law and the duties owed by Markel under its policies and the law. As a result of Markel's efforts to be knowledgeable on what the law requires with respect to its duties, Markel, and those who made the decision to deny coverage to the Gleasons, were fully aware, but intentionally chose to ignore, among other things, that Texas law requires that:

- When determining if a duty to defend exists, Markel must act as if all the facts alleged in the plaintiff's petition against the policyholder are true, and that Markel's task is solely to determine if the claims fall within the scope of the policy coverage based on such facts.

- The factual allegations within a petition are to be liberally interpreted when determining if a petition alleges facts that potentially state a claim within the coverage of a policy for purposes of the duty to defend.

- All doubts regarding the duty to defend are to be resolved in favor of the insured.

- Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy.

- If there is doubt as to whether as to whether the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in insured's favor.

79.     Despite this knowledge, knowledge of other requirements to give preference to granting coverage where any question of coverage exists, and despite acknowledging specific

allegations that mandated that Markel defend the Gleasons in the Underlying Lawsuit, Markel made the determination to come up with and assert a faulty interpretation of the allegations in the Original Petition so that it could attempt to deny its duties to the Gleasons.

80.     Specifically, Markel's interpretation requires that everyone accept that OIC Holdings' assertion of Alleged Acts against Tom Gleason and "the Gleasons" in the Original Petition can be interpreted to be **only** asserting that **all** such Alleged Acts were committed in a capacity as **other** than officers of OICLLC. That interpretation ignores the specific assertion that Tom Gleason committed Alleged Acts as an officer of OICLLC. That interpretation further ignores the fact that Julie Gleason did not own shares in Cornerstone or a membership interests in DPT. That interpretation additionally ignores the fact that Julie Gleason could only owe duties or obligations, if at all, in her capacity as an officer of OICLLC as she was not a seller of equity interests in Cornerstone or DPT. That interpretation also ignores the requirement that Markel give a liberal interpretation to the allegations in the Underlying Lawsuit in determining whether coverage exists. Finally, that interpretation ignores the requirement that Markel resolve any doubt about coverage in favor of the Gleasons. That interpretation is simply erroneous and Markel knew as much when it made the decision to deny coverage.

81.     The denial of coverage by Markel was therefore with the specific knowledge that it was improper. Markel undoubtedly believed that the Gleasons would not look further at the policy or allegations and merely accept Markel's interpretation of the denial of coverage.

82.     Markel's actions constitute a knowing misrepresentation to the Gleasons of facts and policy provisions relating to the coverage at issue. Markel's actions also compelled the Gleasons to institute this suit to recover amounts now due to them as a result of Markel's refusal to defend and indemnify them in the Underlying Lawsuit.

83.     Markel has therefore violated at least Sections 541.052, 541.060, 541.061 and 542.003 of the Texas Insurance Code.

84.     Markel's refusal to timely acknowledge the Gleasons' claim and to defend the Gleasons against the allegations made in the Underlying Lawsuit also constitutes a violation of Sections 542.051, 542.055 and 542.056 of the Texas Insurance Code.

85.     Specifically, Markel has failed and refused and continues to fail and refuse to make prompt payment of costs and attorneys' fees that are clearly due and owing under the D&O Coverage of the Management Liability Policy.

86.     The Gleasons are therefore entitled to recover all relief available under Section 541.152 and any other sections providing for remedies to insureds under the Texas Insurance Code, including their attorneys' fees, expenses and costs of court they have expended to defend themselves in the Underlying Lawsuit, as well as any payment they may have to make for any settlement or judgment that may be rendered on the allegations covered by the Management Liability Policy.

87.     Further, Markel knowingly violated Chapters 541 and 542 of the Texas Insurance Code. The Gleasons are therefore entitled to an award of up to three times their actual damages pursuant to Section 541.152(b) of the Texas Insurance Code.

88.     The Gleasons are further entitled to recover all relief available under Section 542.060 and any other sections providing for remedies to insureds under the Texas Insurance Code, including 18% penalties on the attorneys' fees, expenses and costs of court they are incurring in the Underlying Lawsuit, as well as the attorneys' fees they have and will expend in enforcing Markel to comply with its obligations under the Management Liability Policy.

## VII.
## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

89.     The Gleasons re-allege and incorporate by reference the factual allegations above.

90.     The Gleasons are "Insureds" under the Management Liability Policy. Markel accordingly owes each of the Gleasons a duty of good faith and fair dealing.

91.     Markel breached its duty of good faith and fair dealing by failing and refusing to defend the Gleasons in the Underlying Lawsuit without a reasonable basis, and with knowledge that such denial was wrong, as set forth more fully in Section VI. above, inclusive of paragraph 75. Markel's denial of all coverage, and therefore of its obligation to ultimately indemnify the Gleasons from at least certain of the damages in the Underlying Lawsuit without a reasonable basis, and even knowledge that such decision was wrong, is also a breach of this duty.

92.     The Gleasons have been damaged as a result of Markel's bad faith denial of a defense and the repudiation of its indemnification obligation under D&O Coverage of the Management Liability Policy. These damages include the attorneys' fees and expenses they have expended in the Underlying Lawsuit, mental anguish, attorneys' fees and expenses incurred in this matter, and all other damages available to them. The Gleasons seek all such damages from Markel.

## VIII.
## EXEMPLARY AND ADDITIONAL DAMAGES

93.     The Gleasons re-allege and incorporate by reference the factual allegations above.

94.     Markel knew that the bases for its denial of defense to the Gleasons and its repudiation of its indemnification obligation under the Management Liability Policy were wrong. Markel nevertheless denied such defense and repudiated its indemnification obligation

---

**PLAINTIFFS' FIRST AMENDED COMPLAINT - PAGE 20**

intentionally or through gross negligence. Accordingly, the Gleasons are entitled to recover exemplary damages from Markel.

95.     Markel's violations of Section 541 of the Texas Insurance Code were knowingly committed. The Gleasons are therefore entitled to recover three times the amount of their actual damages.

## IX.
## ATTORNEYS' FEES, COSTS AND INTEREST

96.     The Gleasons re-allege and incorporate by reference the factual allegations above.

97.     The Gleasons presented the Underlying Lawsuit to Markel and requested that it fulfill its obligations to defend and indemnify the Gleasons therein. Despite such presentment, Markel has not performed its obligations under the Management Liability Policy and instead has specifically refused to perform its obligations under that Policy.

98.     The Gleasons are therefore entitled to recover the costs and attorneys' fees they have and will incur in this proceeding, as well as all appeals, pursuant Chapter 38 of the Texas Civil Practices and Remedies Code, as well as the Texas Insurance Code.

99.     The Gleasons also seek prejudgment and post judgment interest at the maximum legal rate on the money due and owing.

## X.
## PRAYER

WHEREFORE, Tom Gleason and Julie Gleason request judgment against Markel American Insurance Company awarding Tom Gleason and Julie Gleason all damages sustained as a result of Markel American Insurance Company's actions and omissions, exemplary damages and/or additional damages as alleged, prejudgment and post judgment interest, their reasonable

attorney's fees and costs incurred in this lawsuit, and such other and further relief to which they may show themselves entitled.

Respectfully Submitted,

/s/ *Bryan Haynes*

**BRYAN HAYNES**
State Bar No.09283520
Email: Bryan.Haynes@solidcounsel.com
**SCHEEF & STONE, LLP**
500 North Akard Street
Suite 2700
Dallas, Texas 75201
(214) 706-4200 Phone
(214) 706-4242 Fax

**J. MITCHELL LITTLE**
State Bar No. 24043788
Email: Mitch.Little@solidcounsel.com
**ANDREA K. BOURESSA**
State Bar No. 24061549
andrea.bouressa@solidcounsel.com
**SCHEEF & STONE, LLP**
2601 Network Blvd., Suite 102
Frisco, Texas  75034
(214) 472-2100 Telephone
(214) 472-2150 Fax

**ATTORNEYS FOR PLAINTIFFS
TOM GLEASON AND JULIE GLEASON**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 7, 2017, I electronically filed the foregoing document with the United States District Court for the Eastern District of Texas, Sherman Division by using the CM/ECF system. I certify that the following counsel of record is registered as an ECF Filer and that he will be served by the CM/ECF system:

Marc J. Wojciechowski
Marc@wojolaw.com
**WOJCIECHOWSKI & ASSOCIATES, P.C.**
17447 Kuykendahl Road, Suite 200
Spring, Texas 77379
281-999-7774
281-999-1955 (Facsimile)
***Counsel for Defendant Markel American Insurance Company***

/s/ *Bryan Haynes*
Bryan Haynes