# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| TOM GLEASON and JULIE GLEASON | § | |
| | § | |
| v. | § | Civil Action No. 4:17-CV-00163 |
| | § | Judge Mazzant |
| MARKEL AMERICAN INSURANCE | § | |
| COMPANY | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant's Motion for Final Summary Judgment (Dkt. #20) and Plaintiffs' Motion for Partial Summary Judgment (Dkt. #22). After considering the motions, and the relevant pleadings, the Court finds that Defendant's motion should be granted and Plaintiffs' motion should be denied.

## BACKGROUND

Plaintiffs Tom Gleason and Julie Gleason ("the Gleasons") owned interests in a few closely held companies. Through these companies the Gleasons indirectly owned Oregon Ice Cream, LLC ("the Company") and entered an agreement to sell their interest to OIC Holdings, LLC ("OIC") on October 1, 2014. OIC alleged that the Gleasons made false representations during the negotiations and in the Equity Interest Purchase Agreement (the "Purchase Agreement"). Based on this transaction, OIC brought suit against the Gleasons in the 336th Judicial District Court of Collin County, Texas ("OIC Suit"). OIC filed its First Amended Petition and Request for Disclosure on June 8, 2016 ("the underlying Petition" or "the Petition").

Defendant Markel American Insurance Company issued a For Profit Management Liability Policy No. ML-815039 (the "Policy") to the Company.[1] The Policy was effective for claims made

---
[1] Tom and Julie Gleason were officers of the Company.

between August 31, 2014, and October 2, 2020, for "Wrongful Acts" that occurred before October 2, 2014. The Policy included Directors and Officers and Company Liability coverage. The relevant portions of the Policy, including the Directors and Officers and Company Liability provision and Exclusion K, are as follows:

**Section III – DEFINITIONS**

    A. **Claim** means:

       . . .

       2. a civil proceeding against any **Insured** commenced by the service of a complaint or similar pleading upon such **Insured**;

       . . .

       for a **Wrongful Act**, including any appeal therefrom.

. . .

    C. **Insured Person**, whether in the singular or plural, means:

       1. any natural person who was, now is or shall during the **Policy Period** become a duly elected or appointed director, trustee, governor, **Manager**, officer, advisory director, or member of a duly constituted committee or board of the **Company** or their functional equivalent;

. . .

    H. **Outside Position** means the position of director, officer, manager, trustee, governor or other equivalent executive position in an **Outside Entity** held by an **Insured Person**, if service in such position is with the knowledge and consent of, at the direction or request of, or part of the duties regularly assigned to the **Insured Person** by the **Company**.

. . .

    K. **Wrongful Act** means:

       1. any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty by any **Insured Person** in their capacity as such or in an **Outside Position**, or with respect to Insuring Agreement C, by the **Company**; or

> **2.** any matter claimed against any **Insured Person** solely by reason of their serving in such capacity or in an **Outside Position**.
>
> **Section IV – EXCLUSIONS**
>
> The Insurer shall not be liable under this Coverage Part to pay any **Loss** on account of, and shall not be obligated to defend, any **Claim** made against any **Insured**:
>
> . . .
>
> **K.** based upon, arising out of or in any way involving (**i**) the actual, alleged or attempted purchase or sale, or offer or solicitation of an offer to purchase or sell, any debt or equity securities, or (**ii**) the actual or alleged violation of any federal, state, local or common or foreign law relating to debt or equity securities; provided this exclusion shall not apply to any **Claim**:
>
> > **1.** based upon, arising out of or in any way involving the purchase or sale, or offer or solicitation of an offer to purchase or sell, any debt or equity securities in a private[ ]placement transaction exempt from registration under the Securities Act of 1933, as amended.

(Dkt. #20, Exhibit A at pp. 26–29).

On January 22, 2016, the Gleasons submitted their claim under the Policy to Defendant. On March 15, 2016, Defendant acknowledged the Gleasons as Insured Persons under the Policy, but denied coverage asserting that there was no "Wrongful Act" because the Gleasons did not act as officers or directors ("insured capacity") in the allegations contained in the OIC Suit and that even if there were a "Wrongful Act," Exclusion K precluded coverage.

On February 3, 2017, the Gleasons filed the present suit in the 366th Judicial District Court of Collin County, Texas, alleging a breach of contract and extra-contractual claims based on Defendant's denial of coverage. On March 6, 2017, Defendant filed its Notice of Removal (Dkt. #1). Since the Gleasons initiated the current suit, the OIC Suit concluded. The Gleasons prevailed on all claims and the district court awarded the Gleasons reasonable and necessary attorney's fees and costs. On September 15, 2017, Defendant filed its motion for summary judgment (Dkt. #20). The Gleasons filed their response on October 13, 2017 (Dkt. #26) and

Defendant filed its reply on October 20, 2017 (Dkt. #30). On October 20, 2017, the Gleasons filed objections to the summary judgment evidence Defendant submitted (Dkt. #32) and Defendant responded to the Gleasons' objections on October 27, 2017 (Dkt. #36). Further, on September 18, 2017, the Gleasons filed their motion for partial summary judgment (Dkt. #22). On October 13, 2017, Defendant filed its response (Dkt. #27). The Gleasons filed their reply on October 20, 2017 (Dkt. #31) and Defendant filed its sur-reply on October 27, 2017 (Dkt. #35).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or

defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

**ANALYSIS**

Defendant moves for summary judgment because it maintains that (1) it did not owe a duty to defend the OIC Suit and (2) the Gleasons are barred by the one satisfaction rule. The Gleasons move for partial summary judgment contending that Defendant breached the duty to defend. The Court will address Defendant's duty to defend the Gleasons in the OIC Suit, and because it finds there was no duty to defend, will not address the one satisfaction rule.

"Under Texas law, an insurer may have two responsibilities relating to coverage—the duty to defend and the duty to indemnify." *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 594

(5th Cir. 2011) (citing *D.R. Horton – Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009)). The duties to defend and indemnify are distinct, and one may exist without the other. *Id*.; *see also Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 253–54 (5th Cir. 2011). An insurer's duty to defend is determined by the application of the "eight-corners rule." *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006). "The rule takes its name from the fact that only two documents are ordinarily relevant to the determination of the duty to defend: the policy and the pleadings of the third-party claimant." *Id*. (citing *King v. Dall. Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002)). "[T]he duty to defend does not rely on the truth or falsity of the underlying allegations; an insurer is obligated to defend the insured if the facts alleged in the petition, taken as true, potentially assert a claim for coverage under the insurance policy." *Colony*, 647 F.3d at 253 (citing *GuideOne*, 197 S.W.3d at 308). All doubts regarding the duty to defend are resolved in favor of the duty, and the pleadings are construed liberally. *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008). If a complaint potentially includes a covered claim, the insurer must defend the entire suit. *Id*. (citation omitted).

Further, the Court must "apply Texas law as interpreted by Texas state courts." *Gilbane Bldg. Co.*, 664 F.3d at 593 (quoting *Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000)). Under Texas law, "insurance policies are construed according to common principles governing the construction of contracts, and the interpretation of an insurance policy is a question of law for a court to determine." *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 562 (5th Cir. 2010). The Court must interpret the policy to discern the intention of the parties as it is expressed in the policy. *Id*. "Whether a contract is ambiguous is [also] a question of law." *Id*. (citing *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998)). An ambiguity is not present simply because the parties advance conflicting

6

interpretations, but exists "only if the contractual language is susceptible to two or more reasonable interpretations." *Id*. (quoting *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003)). "Effectuating the parties' expressed intent is [the Court's] primary concern." *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co*., 267 S.W.3d 20, 23 (Tex. 2008). "No one phrase, sentence, or section [of the policy] should be isolated from its setting and considered apart from the other provisions." *Id*. (quoting *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994)). A policy's terms should be given their plain meaning, without inserting additional provisions in the contract. *Id*.

In determining whether an insurer has a duty to defend, the policyholder "bears the initial burden of showing that the claim [in the underlying action] is potentially within the insurance policy's scope of coverage." *Harken Expl. Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001) (citation omitted). "However, it is the insurer that carries the burden of establishing that 'the plain language of a policy exclusion or limitation allows the insurer to avoid coverage of all claims, also within the confines of the eight corners rule." *Regency Title Co. v. Westchester Fire Ins*., No. 4:11-cv-390, 2013 WL 6054820, at *4 (E.D. Tex. Nov. 15, 2013) (citing *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004)). In addition, "[e]xclusions [in the insurance policy] are narrowly construed, and all reasonable inferences must be drawn in the insured's favor." *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co*., 538 F.3d 365, 370 (5th Cir. 2008). An exclusion is ambiguous only if it is clearly susceptible to multiple reasonable interpretations. *Regency Title Co.*, 2013 WL 6054820, at *4 (citing *Carolina Cas. Ins. Co. v. Sowell*, 603 F. Supp. 2d 914, 923 (N.D. Tex. 2009)). "[The] rules favoring the insured . . . are applicable only when there is an ambiguity in the policy; if the exclusions in question are susceptible to only one reasonable interpretation, then [the rules favoring the insured] do not

7

apply." *Id*. (quoting *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 369 (5th Cir. 1998)). "Courts should not strain to find an ambiguity, if, in doing so, they defeat the probable intentions of the parties, even though the insured may suffer an apparent harsh result as a consequence." *Ohio Cas. Grp. of Ins. Cos. v. Chavez*, 942 S.W.2d 654, 658 (Tex. App.—Houston [14th Dist.] 1997, writ denied). "Furthermore, if a policy provision is susceptible to only one reasonable interpretation, the [C]ourt is obligated to give the words their 'plain meaning' even if this means coverage is denied." *Regency Title Co*., 2013 WL 6054820, at *4 (citing *Evanston Ins. Co. v. Legacy of Life, Inc*., 645 F.3d 739, 744–45 (5th Cir. 2011)).

Defendant argues that it did not owe the Gleasons a duty to defend in the OIC Suit because the actions surrounding the transaction were not "Wrongful Acts," as contemplated by the Policy. Further, even if there is a "Wrongful Act," Defendant maintains that the transaction falls into Exception K, and the Policy provides no coverage. The Gleasons assert that the OIC Suit involved alleged "Wrongful Acts" under the Policy. Further, the Gleasons argue that Exception K does not apply because of the private placement exemption. As such, the Gleasons assert the policy covers the OIC Suit. The Court will first look to whether the actions surrounding the OIC Suit are "Wrongful Acts" and then will address whether the claim fits into Exemption K.

I. **"Wrongful Act"**

The Policy covers an insured person acting in their insured capacity, as an officer and director.[2] Defendant avers that the Gleasons were not acting in their insured capacity during the factual allegations that make up the OIC Suit. Defendant alleges that the Gleasons acted as the sellers of their equity interest in the holding companies that owned the Company in the OIC suit, not as officers and directors. The Gleasons maintain that the underlying Petition does not limit the

---

[2] The Court notes that there are more conditions to be covered under the Policy; however, Defendant only challenges the "Wrongful Act" requirement.

capacity in which it seeks damages from the Gleasons, and in fact the Petition specifically references Tom Gleason both in his capacity as an officer and director and as a seller. According to the Gleasons, the underlying Petition also contains several allegations that do not refer to the Gleasons in either capacity.

Defendant supports its contention with a few distinguishable cases, including *Beck*. In *Beck*, the policy only covered losses incurred by the directors or officers . . . *solely* in that capacity." *Beck v. Am. Cas. Co. of Reading, Penn.*, No. MO–88–CA–303, 1990 WL 598573, at *14 (W.D. Tex. Apr. 12, 1990) (emphasis added). Further, in that case, "[t]he petition ma[de] a clear distinction between the roles of 'Inside Shareholder' and 'Former Director.'" *Id.* Based on this set of facts, the court found that there was no duty to defend because it was "clear that the claims asserted against the [p]laintiffs are not for actions taken by them *solely* in their capacities as officers and directors. . . ." *Id.* at *15 (emphasis in original).

Here, the policy does not explicitly state that a "Wrongful Act" occurs when the Gleasons act solely in their official capacity.[3] Further, the underlying Petition references the Gleasons in both their capacity as sellers and as officers and directors. Indeed, several times, the underlying Petition does not specify any capacity. The specific allegations in the underlying Petition's cause of action section also does not state that OIC sued the Gleasons in their capacity as sellers. As such, the Petition does not conclusively establish the capacity in which the Gleasons were sued. It is not unreasonable to read the Petition as potentially alleging that the Gleasons committed at least one "error, misstatement, misleading statement, act, omission, neglect, or breach of duty" in their insured capacity. It is accordingly appropriate to find that the Policy provided coverage, before

---

[3] Subsection 2 of the "Wrongful Act" definition does indicate that the act must be made solely in the insured capacity; however, because the OIC Suit arises out of an "actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty," the Gleasons do not need to use Subsection 2 for coverage. Subsection 1 does not make the same limitation.

looking to the exclusions, for the underlying Petition.[4]  *See*, *Zurich Am. Ins. Co.*, 268 S.W.3d at 491; *Nat'l Union Fire Ins.*, 939 S.W.2d at 141.

**II. Exclusion K**

Defendant contends that even if the Gleasons' actions are "Wrongful Acts," the underlying Petition triggers Exclusion K of the Policy and the claim is not covered under the Policy. Exclusion K provides that the insurer is not liable for any claim "based upon, arising out of or in any way involving (**i**) the actual, alleged or attempted purchase or sale, or offer or solicitation of an offer to purchase or sell, any debt or equity securities." (Dkt. #20, Exhibit A at p. 29). The Gleasons argue that not all of the allegations arise out of the sale of the Gleasons' interests in the Company. Accordingly, the Gleasons maintain that Defendant must defend the suit, even if there is only one claim that is not precluded under Exclusion K.

"The words 'arising out of' are words of much broader significance than the words 'caused by,' and are ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to,' or having connection with." *State Farm Lloyds v. Chandler*, No. 4:04-cv-186, 2005 WL 2467071, at *3 (E.D. Tex. Oct. 6, 2005) (quoting *Red Ball Motor Freight, Inc. v. Emp'rs Mut. Liab. Ins. Co. of Wis.*, 189 F.2d 374, 278 (5th Cir. 1951)). "'[W]hen an exclusion precludes coverage for injuries arising out of described conduct, the exclusion is given a broad, general, and comprehensive interpretation. A claim need only bear an incidental

---

[4] Any doubts regarding coverage are to be resolved in the insured's favor:
> Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy. Stated differently, in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in insured's favor.

*Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997) (quoting *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)); *see also King v. Dall. Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002) ("[W]e resolve all doubts regarding the duty to defend in favor of the duty.").

relationship to the described conduct for the exclusion to apply.'" *Id.* (quoting *Scottsdale Ins. Co. v. Tex. Sec. Concepts & Investigation*, 173 F.3d 941, 943 (5th Cir. 1999)). Even if the Gleasons are correct that some of the allegations are not caused by the sale of the Gleasons' interest in the Company, all of the allegations bear, at the very least, an incidental relationship to the sale of their interest in OIC. *See id.* (quoting *Scottsdale Ins. Co.*, 173 F.3d at 943). Using the example the Gleasons provided, the allegations pertaining to Tom Gleason's withholding financial information from the auditors demonstrate his knowledge of the pertinent facts during the negotiations for the sale of the Gleasons' interest in the Company (Dkt. #26, Exhibit B at ¶ 103–105). Therefore, the OIC Suit fits into Exclusion K.

However, Exclusion K contains an exemption, which states that the exclusion shall not apply to claims that are "based upon, arising out of or in any way involving the purchase or sale, or offer or solicitation of an offer to purchase or sell, any debt or equity securities in a private[ ]placement transaction exempt from registration under the Securities Act of 1933, as amended." (Dkt. #20, Exhibit A at p. 29). Defendant argues that the Gleasons are not exempt from registration under the Securities Act of 1933 because a private placement transaction requires the issuance of securities from an issuer, and the Gleasons are not issuers. The Gleasons respond that a private placement transaction is not defined in the Policy. As such, the Gleasons maintain that the Court is not limited to using the definition provided by Defendant, and in fact should use the definition that is most favorable to the insured. The Gleasons aver that there are several definitions of private placement transaction that do not include the term issuer, and using these definitions, the Gleasons maintain the sale of the membership is a private placement transaction contemplated by the Policy.

This argument is belied by the Gleasons' own contentions. The Gleasons contend that the transaction is a private placement transaction exempted from registration under Section 4(a)(2) of the Securities Act of 1933 and the safe harbor provided by Rule 506 of Regulation D to the Securities Act of 1933. Section 4(a)(2) states that, "transactions by an *issuer* not involving any public offering" are exempted from registration. 15 U.S.C. 77d(a)(2) (emphasis added). Rule 506 of Regulation D provides, in relevant part, that the "[o]ffers and sales of securities by an *issuer* that satisfy the conditions in paragraph (b) or (c) of this section shall be deemed to be transactions not involving any public offering within the meaning of section 4(a)(2) of the Act." 17 C.F.R. § 230.506 (emphasis added). Accordingly, it does not matter what definition Defendant used to define private placement transaction, because the sections the Gleasons rely on require the Gleasons to be issuers. As such, the Gleasons must be issuers for the transaction to be considered a private placement transaction under the Policy.

Defendant argues that the Gleasons are not issuers because no security was issued in this transaction. Defendant maintains that the Gleasons merely resold securities that had previously been issued. Defendant asserts that the underlying Petition[5] and the Purchase Agreement[6] support this contention. The Gleasons did not provide an argument suggesting that they were issuers pursuant to the Securities Act of 1933. The Securities Act of 1933 defines an issuer as "every person who issues or proposes to issue any security." 15 U.S.C. 77b(a)(4). Looking to the

---

[5] Defendant points the Court to the following excerpts, among others, from the pleadings, to demonstrate that the pleadings emulate a personal sale of interest rather than an issuance of securities: "The Purchase Agreement obligated the [Gleasons] to sell to OIC their interest in the holding companies that owned Oregon Ice Cream" (Dkt. #20, Exhibit D at ¶ 10); "The Gleasons received $17,695,811.50 of those proceeds. Tom Gleason's parents received $841,698.84. Another $1,650,000 was placed in an escrow account;" (Dkt. #20, Exhibit D at ¶ 12); "As is customary in agreements for the acquisition of a business, the Purchase Agreement contains a mechanism designed to ensure that the business had a sufficient amount of working capital when acquired by OIC." (Dkt. #20, Exhibit D at ¶ 34).

[6] Defendant points the Court to the following excerpt from the Purchase Agreement to demonstrate that this transaction did not involve an issuance because the equity interest had already been issued: "[Julie] Gleason is the beneficial holder, as joint-tenant with Tom Gleason, of 100% of the *issued* and outstanding shares of common stock of Cornerstone. . . ." (Dkt. #20, Exhibit B at p. 90) (emphasis added).

underlying Petition and Purchase Agreement, the transaction involved the resale of securities that had previously been issued, not the issuance of securities by the Company.[7] Accordingly, the Gleasons are not issuers as defined by the Securities Act of 1933. Because the Gleasons are not issuers, the transaction is not a private placement transaction as defined in Section 4(a)(2) or Rule 506 of Regulation D to the Securities Act of 1933. Since the transaction is not a private placement transaction as defined in the Securities Act of 1933, the claim is not "based upon, arising out of or in any way involving the purchase or sale, or offer or solicitation of an offer to purchase or sell, any debt or equities securities in a private[ ]placement transaction exempt from registration under the Securities Act of 1933." (Dkt. #20, Exhibit A at p. 29). Therefore, the claim does not fit into the private placement exemption, and is excluded pursuant to Exclusion K. Accordingly, Defendant did not have the duty to defend the OIC Suit because the claim was excluded from coverage.

### PLAINTIFFS' OBJECTIONS TO DEFENDANT'S SUMMARY JUDGMENT EVIDENCE

The Gleasons object to Defendant's evidence as being outside the "eight corners," specifically pointing to Docket Number Twenty Exhibit B (the Purchase Agreement), Exhibit E (the docket sheet for the OIC Suit), Exhibit F (the docket sheet for the OIC Suit), Exhibit G (letter from Joseph L. Franco requesting coverage under the Policy), Exhibit H (letter from Michael R. Delhagen denying coverage under the Policy), and Exhibit I (the Gleasons' Motion for Determination of Prevailing Party and Hearing for Entry of Fees and Costs Award in the OIC Suit).[8] In its analysis, the Court did not reference or even look to Exhibit E, Exhibit F, Exhibit G,

---

[7] The Court does not hold that an individual cannot be an issuer, merely with this set of facts, the Gleasons are not issuers.
[8] The Gleasons make the same objection to Docket Number 27 Exhibits C, F, G, H, and I. These exhibit are the same documents provided as exhibits by Defendant in Docket Number 20.

Exhibit H, or Exhibit I. As such, the Court will sustain the objection, as the evidence did not affect the Court's analysis.

Defendant responds that Exhibit B, the Purchase Agreement, is proper evidence because the underlying Petition repeatedly references the Purchase Agreement. Defendant maintains that the Court is permitted to use a document that is specifically referred to or incorporated by either the underlying Petition or the Policy. Further, Defendant argues that the Purchase Agreement fits into the exception to the "eight corners" rule because it was initially impossible to discern whether coverage was implicated and that it went to the fundamental issue of coverage.

The Court overrules the objection to Exhibit B to Docket Number 20, the Purchase Agreement, because the underlying Petition referenced the Purchase Agreement several times, which incorporates the terms of the Purchase Agreement into the underlying Petition. *See In re Deepwater Horizon*, 470 S.W.3d 452, 464 (Tex. 2015); *Ins. Co. of the State of Penn. v. Roberts*, 506 S.W.3d 498, 505–06 (Tex. App.—Houston [1st Dist.] 2017, pet. filed). This requires the Purchase Agreement to be consulted in order to properly engage in the "eight corners" analysis. *See In re Deepwater Horizon*, 470 S.W.3d at 464; *Ins. Co. of the State of Penn.*, 506 S.W.3d at 505–06. *See also Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (allowing courts to use documents referenced in and central to a complaint when analyzing a motion to dismiss).

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion for Final Summary Judgment (Dkt. #20) is hereby **GRANTED** Plaintiffs' Motion for Partial Summary Judgment (Dkt. #22) is hereby **DENIED**. Accordingly, Defendant did not owe a duty to defend as a matter of law. All of

Plaintiffs' claims are based on the duty to defend, and as such, all of Plaintiffs' claims fail as a matter of law. Therefore, Plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

    **SIGNED this 24th day of January, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE